# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ROGER RIDDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:11-cv-0044 |
| v. | ) | |
| | ) | |
| LOWE'S HOME CENTERS, INC., | ) | JUDGE SHARP |
| | ) | MAGISTRATE JUDGE BROWN |
| Defendant. | ) | |

## MEMORANDUM

Defendant Lowe's Home Centers, Inc. ("Defendant" or "Lowes") filed a Motion to Dismiss (Docket Entry No. 5), to which Plaintiff Roger Riddle ("Plaintiff") filed a response (Docket Entry No. 7). Further, as directed by the Court's Order (Docket Entry No. 11), Plaintiff filed a supplemental brief on jurisdiction (Docket Entry No. 14), and Defendant filed a response (Docket Entry No. 15). For the reasons discussed herein, the Court retains jurisdiction of this cause of action, and Defendant's Motion to Dismiss will be granted.

## FACTUAL AND PROCEDURAL HISTORY

On or about April 5, 2010, Plaintiff visited the Cookeville, Tennessee location of Lowes. He purchased numerous four by six pieces of plywood.[1] Plaintiff did so by loading each from the store shelf onto a cart provided by Lowes and rolling the same to the checkout. After checking out, but before exiting the premises, Plaintiff approached an employee of Defendant who was stationed at the exit door with a walkie talkie and requested assistance loading the plywood onto his truck. Plaintiff was told that no such help was available, after asking two

---

[1] Unless otherwise noted, the allegations are drawn from Plaintiff's Complaint (Docket Entry No. 1 Ex. 1).

1

times.[2] Plaintiff then pulled his vehicle to the front of the store and began loading the plywood onto the bed of his truck. In the process, Plaintiff sustained severe personal injury.

Subsequently, Plaintiff returned to the store to complain of his injury, whereupon the store manager pointed out several persons whose exclusive job it was to load purchased items, such as that purchased by Plaintiff, onto vehicles.

Plaintiff initiated this action in the Circuit Court of Putnam County, Tennessee, on March 22, 2011 (Docket Entry No. 1 Ex. 1). On or about April 15, 2011, Defendant filed a Notice of Removal causing the action to be removed to this Court based on diversity jurisdiction under 28 U.S.C. § 1332 (Docket Entry No. 1).

## **ANALYSIS**

Plaintiff brought this action against Defendant, alleging various state law claims, including negligence, negligent misrepresentation, intentional misrepresentation, and violation of the Tennessee Consumer Protection Act. Defendant filed a Motion to Dismiss for failure to state a claim on each count.

On June 1, 2011, the Court ordered supplemental briefing by the parties as to subject matter jurisdiction and any removal issues; supplementary briefs have been filed. The Court will address this issue first then proceed to the Motion to Dismiss.

### I. Jurisdiction

In response to the pending Motion to Dismiss, Plaintiff indicated that he may challenge removal of the state court action to this Court based upon subject matter jurisdiction and/or that he may raise the issue of defective filing. (Docket Entry No. 8 at 2). Plaintiff further stated that he filed and served an Amended Complaint on Defendant adding a party defendant <u>prior</u> to the

---

[2] Plaintiff had been a previous customer of Lowes and avers it routinely assisted customers with loading.

Notice of Removal filing. (*Id.*). There are inconsistencies and confusion between the parties regarding the timing of service of process and/or lack thereof in conjunction with the Amended Complaint.

Specifically, Plaintiff claims before any responsive pleading had been filed to the original Complaint, he filed an Amended Complaint on March 25, 2011, adding "John Doe," an unidentified employee of Lowes. (Docket Entry No. 14 at 2). On April 6, 2011, copies of the Amended Complaint and Summons were served upon Corporation Service Company, the registered agent for service of process for Lowes.[3] (*Id.*). In its Notice of Removal, Defendant made no reference to Plaintiff's Amended Complaint nor did the style utilized in the notice reflect that Plaintiff had named John Doe as an additional defendant to this action. (*Id.*). Defendant, claims, however, that it is has never been served with the Amended Complaint. (Docket Entry No. 15 at 1). Defendant maintains it was served on April 6, 2011, but with original Complaint and Summons – not the amended one.[4] (*Id.*).

The original Complaint (hereinafter referred to as the "Complaint") was attached to the Notice of Removal filed by Defendant. As such, the Complaint has been made a part of the court record in this cause of action. Nevertheless, since there are discrepancies regarding the Amended Complaint, the Court will address the issue of jurisdiction and its interplay with a fictitious defendant.

---

[3] In support of his position, Plaintiff attached a copy of the Amended Complaint, Summons, and an Affidavit of Service providing April 6, 2011, as the date of service. (Docket Entry No. 14 Ex. 1).

[4] Defendant attached copies of the Notice of Service of Process, Summons, and original Complaint in support of its position. (Docket Entry No. 15 Ex. 1). Defendant further provided an Affidavit from Andrew Gachaiya ("Gachaiya"), Customer Service Specialist for Corporation Service Company, stating the company received service for a Summons and Complaint on April 6, 2011. (*Id.* Ex. 2 at ¶8). Gachaiya further stated, "following a thorough and complete review of records… CSC has **NO** record of having received any other documents for Lowe's Home Centers, Inc. in [this matter]." (*Id.* at ¶9).

To establish original jurisdiction through diversity, the matter in controversy must exceed the sum of $75,000 and must be between citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity; that is, no defendant may be a citizen of the same state as any plaintiff. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Lampton v. Columbia Sussex Corporation*, 2010 WL 3075752, *2 (E.D.Mich. Aug. 5, 2010).

Under 28 U.S.C. § 1441(b), an action brought in state court is removable "only if none of the parties in interest properly joined as defendants is a citizen of the state in which such action is brought." As such, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The court should resolve questions in favor of remand to state court, as the burden of proving proper federal jurisdiction is on the removing party. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993). Whether Defendant has the right to remove this case must be determined from the allegations in the Complaint at the time of removal. *Holloway v. Pacific Indem. Co.*, 422 F.Supp. 1036, 1037 (E.D.Mich. 1976) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939)); *Lampton*, 2010 WL 3075752 at *2.

The Sixth Circuit has consistently relied on a strict interpretation of the language of this statute, disregarding fictitious defendants' citizenships without reference to any other factors. *See, e.g., Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 539 (6th Cir. 2006); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994); *Farris v. JP Morgan Chase Bank*, No. 09-CV-14094-DT, 2010 U.S. Dist. 6991, *2-*3 (E.D.Mich. Jan. 28, 2010). The language of 28 U.S.C. § 1441(a) clearly and unambiguously states that the court may not consider the citizenship of a fictitious defendant for the purpose of determining whether to remand a case

founded upon diversity jurisdiction. *Lampton*, 2010 WL 3075752 at *3. "Once [an] individual is properly joined, the court's diversity jurisdiction [would] be destroyed and a remand order [would] be proper pursuant to 28 U.S.C. § 1447(c). *Id.* at *4; s*ee also Curry,* 462 F.3d at 539-40.

Plaintiff alleges upon information and belief that John Doe is an employee of Lowes and a resident of Putnam County, Tennessee. (Docket Entry No. 14 at 2). Consequently, he argues that his presence in the action destroys complete diversity between the parties as required by 28 U.S.C. § 1332. (*Id.* at 3). Plaintiff further submits that "the distance between Cookeville, Tennessee and the nearest border of contiguous state (Kentucky) is more than 100 miles… [and] it would be highly unlikely that any individual employed at the Lowe's store located in Cookeville, Tennessee, including Defendant John Doe, would be a citizen of any state other than Tennessee." (*Id.* at 7).

Defendant asserts that this Court has original jurisdiction because there is complete diversity among the parties. (Docket Entry No. 15 at 2). Plaintiff is a citizen of White County, Tennessee, and Defendant Lowes is a North Carolina Corporation. (*Id.*). Defendant asserts that John Doe defendant is treated as a fictitious person, and as such, John Doe's citizenship should be disregarded in determining the court's jurisdiction over this case pursuant to 28 U.S.C. § 1441(a). (*Id.* at 5).

At the time of removal, this Court had subject matter jurisdiction in accordance with the requirements of diversity jurisdiction under 28 U.S.C. § 1332, wherein the matter in controversy exceeded $75,000 and was between citizens of different states (Tennessee and North Carolina). Even if the Court accepts the Amended Complaint (adding John Doe as a party defendant), jurisdiction in this court is proper. The citizenship of John Doe, a fictitious defendant, cannot be

considered for the purpose of determining whether to remand a case founded upon diversity jurisdiction.

Hence, the Court will retain jurisdiction in this matter.

## II.     Motion to Dismiss

The Federal Rules of Civil Procedure require Plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all of the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

### A. Negligence Claim

To establish a claim of negligence, which is "basically defined as the failure to exercise reasonable care," a plaintiff must prove the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quotation marks omitted). Whether a defendant owes a duty of care to a plaintiff is a question of law to be determined by the courts. *Id.* In the instant case, Defendant argues that Plaintiff's negligence claim must fail because Plaintiff has failed to establish the duty element and cannot clear the hurdles of cause in fact or proximate legal cause. (Docket Entry No. 5 at 5).

In the Complaint, Plaintiff claims that his alleged injuries were proximately caused by the following negligent acts or omissions of Defendant: failing to provide assistance in loading purchased items and failing to warn before his purchase that no help would be provided loading the plywood. (Docket Entry No. 1 Ex. 1 at 5). Plaintiff asserts that by employing individuals whose exclusive job it is to assist customers with safely loading merchandise from its store, Defendant has assumed a duty to use reasonable care in providing such assistance to customers. (Docket Entry No. 8 at 7-8). Plaintiff further asserts that Defendant breached that duty by failing to assist him in loading the plywood. (*Id.* at 8).

The issue before the Court is whether there is a legal duty to aid a customer in loading merchandise he or she has purchased (when such service is typical and customary within a store). Plaintiff cites no controlling or even persuasive case law that would impute an affirmative duty on Defendant to provide assistance to its customers when loading merchandise. While the Tennessee courts do not appear to have directly considered the question of whether

7

custom alone can establish a duty, other jurisdictions have addressed this issue. *See, e.g.,Ghaemmahami v. Wal-Mart Stores, Inc.*, 442 F.Supp.2d 354 (S.D. Miss. 2006); *The Kroger Co. v. Smith*, 93 Ark. App. 270, 218 S.W.3d 359 (2005); *Mick v. The Kroger Co.*, 37 Ill.2d 148, 224 N.E.2d 859 (1967).

In *Ghaemmahami v. Wal-Mart Stores, Inc.*, 442 F.Supp.2d 354 (S.D. Miss. 2006), the plaintiff, Ghaemmahami, purchased a riding lawn mower at Wal-Mart. After completing his purchase, Ghaemmahami asked a Wal-Mart employee to put gasoline in the mower and to start the mower and drive it outside to the rented truck. The Wal-Mart employee refused Plaintiff's request[5], so Plaintiff started the mower himself and then drove the mower to the truck. Before he could reach the top of the ramp, the mower fell off the ramp and on top of Plaintiff. Plaintiff argued that Defendant had a duty to assist him in loading the mower and that Defendant breached that duty by not providing assistance. The court concluded, as a matter of law, that no such duty existed.

In *The Kroger Co. v. Smith*, 93 Ark. App. 270, 218 S.W.3d 359 (2005), the plaintiff, Smith, injured her knee when her shopping cart tilted over while she was taking groceries to her car. Smith predicated her claim of negligence on the dual contentions that Kroger had a duty to assist her to her car and that it had a duty to warn her of the danger associated with a person of her size pushing a fully loaded shopping cart. The court concluded that Kroger had no a duty to assist Smith to her car and had no duty to warn Smith of any danger associated with handling a fully-loaded cart. In its analysis, *Kroger* discussed *Mick v. The Kroger Co.*, 37 Ill.2d 148, 224 N.E.2d 859 (1967), wherein the issue before the court was "whether a merchant can be said to have a duty to assist customers in carrying large packages of groceries by virtue of the fact that it customarily did so." The court answered the question in the negative, holding that the store's

---
[5] The employee alleged he did offer assistance, but Plaintiff would not allow him.

policy did not create a legal obligation.

When told that no assistance was available, Plaintiff did not have to attempt to load the plywood. Rather, he could have waited for help in loading and/or asked another employee for assistance. He could have made further inquiry to management, wherein (as Plaintiff alleges) management would have pointed out several personals whose exclusive job it was to load purchased items. Or, further still, he could have simply returned the product. Instead, Plaintiff voluntarily purchased the plywood and chose to pull his vehicle to the front of the store and load the plywood, even though alternative courses of action were obviously available.

Similar to the court's observation in *Wal-Mart*, if this Court were to find that such duty existed, the Court would be creating a new duty for proprietors that has not previously been recognized by Tennessee law. This Court does not have that authority.

Therefore, as a matter of law, Defendant did not have a duty to assist Plaintiff in loading the plywood he had purchased. Thus, the negligence claim will be dismissed.[6] Consequently, the Court need not address Defendant's "causation" arguments.

*B. Misrepresentation Claims*

In the Complaint, Plaintiff asserts claims for negligent and intentional misrepresentation. As a previous customer of Lowes, Plaintiff contends that by assisting customers routinely and in its regular course of business, Defendant negligently misrepresented that Plaintiff would be assisted on April 5, 2010. (Docket Entry No. 1 Ex. 1 at 3). Further, by the false statement of its employee that no such help was available for loading the plywood, upon which Plaintiff relied,

---

[6] Although not specifically raised in the Complaint, Plaintiff asserts in his response that "[the] facts [of his case] are sufficient to state a claim for premises liability." (Docket Entry No. 8 at 10). The Court will not conduct a thorough analysis on this claim. Since the elements of negligence have not been met, this claim must fail as a matter of law. *See Blair v. W. Town Mall*, 130 S.W. 3d 761, 764 (Tenn. 2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn.Ct.App. 1996)).

Defendant negligently misrepresented the same. (*Id.*). Furthermore, for his intentional misrepresentation claim, Plaintiff avers that the employee who stated that no one could assist him intentionally misrepresented the same to Plaintiff. (*Id.*).

Under Tennessee law, "[t]o succeed on a claim for negligent misrepresentation, a plaintiff must establish 'that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiff justifiably relied on the information.'" *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Williams v. Berube & Assocs.*, 26 S.W. 3d 640, 645 (Tenn.Ct.App. 2000)). "Tennessee has adopted Section 552 of the Restatement (Second) of Torts 'as the guiding principle in negligent misrepresentation actions against ... professionals and business persons.'" *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991)). The Restatement (Second) provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552(1) (1977).

"The burden is not upon the defendant to show that it was not negligent, but rather, the burden is upon the plaintiff to show that its reliance upon any statements defendant may have made was reasonable." *McNeil v. Nofal*, 185 S.W. 3d 402, 408-409 (Tenn.Ct.App. 2006) (citing *Metropolitan Government of Nashville and Davidson County v. McKinney*, 852 S.W. 2d 233, (Tenn.Ct.App. 1992). "Justifiable reliance is a necessary element in a cause of action based upon negligent (or fraudulent) misrepresentation… until the justifiable reliance element is

established, there is no negligent misrepresentation." *McNeil*, 185 S.W. 3d at 409 (citing *Lambdin v. Garland*, 723 S.W. 2d 953 (Tenn.Ct.App. 1986)).

To establish a claim of intentional misrepresentation, a plaintiff must demonstrate (1) a representation of an existing or past fact, (2) that the representation was false when it was made, (3) that it related to a material fact, (4) that it was made knowingly, recklessly, or without belief in its truth, (5) that the plaintiff reasonably relied on the misrepresentation, and (6) that the plaintiff suffered injury as a result of his or her reliance on the misrepresentation. *Walker*, 249 S.W.3d at 311; *see also Power & Tel. Supply Co.*, 447 F.3d at 931 (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Because a claim for intentional misrepresentation is "analyzed as a claim for fraud," it must be pleaded with particularity, which requires a plaintiff to allege "the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." *Power & Tel. Supply Co.*, 447 F.3d at 931.

Whether it be negligent or intentional, Plaintiff must prove that he reasonably relied upon the misrepresentation to his detriment. *See McNeil*, 185 S.W. 3d at 408 (addressing reasonable reliance in the context of negligent misrepresentation); also s*ee Rural Developments, LLC v. Tucker*, 2009 WL 112541, *7 (Tenn.Ct.App. 2009) (citing *Hill v. John Banks Buick*, 875 S.W.2d 667 (Tenn.Ct.App.1993) (addressing reasonable reliance in the context of intentional misrepresentation). Accepting as true the Plaintiff's account of the alleged misrepresentation(s), the Court must determine whether Plaintiff's reliance upon the Lowes' employee's statement was reasonable. In this regard, several factors must be considered, including "(1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence

of a fiduciary relationship; (5) the concealment of fraud; (6) the opportunity to discover fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation." *See Goodall v. Akers*, 2009 WL 528784, *6 (Tenn.Ct.App. Jan. 8, 2009); *Pitz v. Woodruff*, M2003-01849-COA-R3-CV, 2004 WL 2951979, *19 (Tenn.Ct.App. Dec. 17, 2004); *see also Allied Sound, Inc. v. Neely*, 58 S.W. 3d 119, 122 (Tenn.Ct.App. 2001). In this regard, Plaintiff admits he had been a previous customer and was aware Defendant routinely assisted customers. When told that no assistance was or would be made available, according to Plaintiff's own allegations, he knew or should have known better. Specifically, Plaintiff alleges that prior to the injury the Defendant negligently misrepresented that he would be assisted in loading his purchases into his truck. Additionally, Plaintiff contends that after his injury he approached store management to complain and was told individuals were available whose exclusive job was to assist with loading merchandise. Plaintiff did not have to attempt to load the plywood - alternative courses of action were available. Given these circumstances, the Court finds that Plaintiff's reliance of the employee's statement was unreasonable. Plaintiff had the means to obtain information needed and discover any misrepresentation if he had simply asked another employee and/or management for assistance. "[A] party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach." *Solomon v. First Am. Nat'l Bank*, S.W. 2d 935, 943 (Tenn.Ct.App. 1989); *see also McKinney*, 852 S.W. 2d at 239.

Therefore, Plaintiff's misrepresentation claims will be dismissed.

*C. Tennessee Consumer Protection Act Claim*

Finally, Plaintiff asserts a claim that Defendant's conduct constituted unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act ("TCPA"), T.C.A. § 47-18-104(a) and T.C.A. § 47-18-104(b)(27). (Docket Entry No. 1 Ex. 1 at 4).

"In order to recover under the TCPA, Plaintiff must prove: (1) that Defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that Defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated ....'" *Birdsong v. Eli Lilly and Co.*, 2011 WL 1259650 (M.D. Tenn. March 31, 2011); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn.Ct.App. 2005) (quoting Tenn. Code Ann. § 47–18–109(a)(1)).

Plaintiff has alleged both bodily and pecuniary injuries resulting from Defendant's unfair and deceptive conduct. (Docket Entry No. 8 at 14-15). Specifically, as a result of these practices, Plaintiff contends he has sustained serious and disabling injuries, some of which may be permanent in nature. (Docket Entry No. 1 Ex. 1 at 5). He has been treated by physicians for such injuries and has suffered in both body and mind. (*Id.*). Further, as a consequence of these injuries, Plaintiff was forced to incur sums of money for medical care, attendance, lost income – and expects to continue to incur further medical expenses and losses of income into the future. (*Id.*).

The damages Plaintiff allegedly sustained flow from the personal injuries he suffered as a result of the April 5, 2010 incident. That is, Plaintiff does not allege "an ascertainable loss of money or property" that exists independently of the personal injuries that he suffered. *See Birdsong*, 2011 WL 1259650 at *3. A TCPA claim must be dismissed where a plaintiff "seeks to recover for injuries to his person resulting from [a defendant's] alleged violation of the TCPA." *See Id.* (quoting *Howard v. R.J. Reynolds Tobacco Co.*, 2005 WL 2088909 at *3 (E.D. Tenn. Aug. 25, 2005)). Similar to *Birdsong,* here, Plaintiff specifically links his TCPA harm to his serious and disabling personal injuries, which forced him to incur sums of money for medical care, attendance and lost income. As such, Plaintiff's TCPA claim must be dismissed.

## **CONCLUSION**

For all of the reasons stated, the Court maintains jurisdiction of this cause of action, and Defendant's Motion to Dismiss (Docket Entry No. 5) is hereby GRANTED.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE